UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:13-CR-65-TLS |
| | ) | |
| CAMERON PATTERSON | ) | |

**OPINION AND ORDER**

On September 10, 2015, this Court sentenced the Defendant, Cameron Patterson, on his plea of guilty to committing armed bank robbery. On August 28, 2017, the Defendant filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 207], and on January 3, 2018, filed a Supplemental Motion [ECF No. 218]. The Government has responded to the Defendant's motions, the Defendant has filed a reply, and the matter is ripe for review.

**BACKGROUND**

On May 29, 2013, three individuals robbed the PNC Bank in Ossian, Indiana. Subsequent investigation, led by Federal Bureau of Investigation (FBI) Special Agent Stewart, identified the Defendant as potentially being one of the robbers. On July 23, 2013, Special Agent Stewart and an FBI Task Force Officer initiated an interview with the Defendant. During the interview, the Defendant confessed his involvement in the Ossian bank robbery. On August 28, 2013, the Defendant and co-defendant Dontae Travier were charged by way of Indictment with armed bank robbery and aiding and abetting, violations of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2.

On March 12, 2014, counsel for the Defendant filed a motion to suppress the statements

the Defendant made to law enforcement on July 23, 2013, and any evidence recovered as a result of the statements, on the grounds that they were made in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), because he was not advised of his Fifth Amendment rights before he offered the statements.[1] The Government argued that the Defendant was not in custody at the time of the interrogation. The Court conducted an evidentiary hearing and received briefing. On February 21, 2015, the Court issued an Opinion and Order denying the Defendant's Motion to Suppress on grounds that the Defendant was not in custody for purposes of *Miranda*. A jury trial was scheduled to begin on March 10, 2015.

At a telephonic pretrial conference on March 3, 2015, counsel for the Defendant requested that he be allowed until March 5, 2015, to file a plea agreement. On March 4, 2015, counsel filed three motions in limine and proposed jury instructions.

On March 5, 2015, a plea agreement between the Government and the Defendant was filed with the Court. It was a conditional plea agreement, meaning that the Defendant *"specifically preserve[d] his right to challenge on appeal* the Opinion and Order dated February 21, 2015, which denied [his] motion to suppress." (Plea Agreement ¶ 6, ECF No. 86.) A separate provision of the plea agreement provided:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal (*except as provided in paragraph 6 of this Plea Agreement*) or to contest my

---

[1] Originally, the Defendant sought to suppress statements he made during a second interview that took place on August 26, 2013, but the Government responded that it did not intend to use any of the Defendant's statement from August 26 against him. Thereafter, the parties focused on the statements the Defendant made on July 23.

conviction and all components of my sentence, or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, other than any claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(*Id.* ¶ 8.g.)

The Court referred the matter to Magistrate Judge Susan Collins to conduct a change of plea hearing to determine whether the Defendant was competent to enter a plea, the Defendant knowingly and voluntarily wished to enter a guilty plea, the Defendant understood the charges against him, and there existed a factual basis for the charges. After conducting the change of plea hearing, the Magistrate Judge issued Findings and Recommendation, finding that the Defendant understood the nature of the charges against him, understood the rights he was giving up by pleading guilty, understood the possible sentences he could receive, was pleading guilty knowingly and voluntarily, was competent to plead guilty, understood his answers could be used against him later in a prosecution for perjury or false statement, and that there was a factual basis for the plea. The Magistrate Judge recommended that the Court accept the Defendant's plea of guilty. No party filed objections to the Findings and Recommendation, and on April 7, 2015, the Court adopted the Report and Recommendation, and set the matter for sentencing.

After sentencing, the Defendant appealed the Court's denial of his motion to suppress. The Seventh Circuit affirmed, concluding that, based on a totality of the circumstances, the Defendant was not in custody when he made the statements to law enforcement on July 23, 2013, as his freedom of movement was not curtailed similar to that of a formal arrest.

# ANALYSIS

The Defendant is attempting to collaterally attack his conviction despite entering into a plea agreement waiving his right to do so. A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).

Here, the Defendant's waiver of his right to collaterally attack his conviction and sentence, "including but not limited to, a proceeding under Title 28, United States Code, Section 2255" (Plea Agreement ¶ 8.g.) is express and unambiguous. It cites the exact provision of the United States Code the Defendant now invokes to challenge his conviction and sentence. The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45); *see also Hurlow v. United States*, 726 F.3d 958, 965 (7th Cir. 2013) (reiterating that "a direct or collateral review waiver does not bar a challenge regarding the validity of a plea agreement (and

necessarily the waiver it contains) on grounds" that the plea agreement was the product "of ineffective assistance of counsel").

The Defendant does not allege that the Court relied on impermissible factors, such as his race, in selecting his sentence, or that he was sentenced in excess of the statutory maximum for the crime he committed. Neither does he claim that, at the time he entered the plea, he did not understand what he was doing. The Defendant's statements during the plea colloquy concerning his understanding of the appellate waiver, as well as his statements that he was pleading guilty of his own free will and that no one had forced him to plead, threatened him, or made any promises that were not part of the plea agreement, all support the conclusion that he entered a knowing and voluntary waiver of his right to collaterally attack the conviction or sentence. (*See* Plea Hr'g Tr. 7, 9–11, 13–14, ECF No. 216.) When a court engages a defendant in a detailed colloquy pursuant to Federal Rule of Criminal Procedure 11, and discusses with a defendant his rights and the consequences of his guilty plea, as it did here, the testimony of the defendant at that hearing is accorded a "presumption of verity." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987); *cf. United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) (stating that a "defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, . . . faces 'a heavy burden of persuasion'") (quoting *Ellison*, 835 F.2d at 693). "[A] careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary," *United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002), and courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver, *United States v. Jemison,* 237 F.3d 911, 917 (7th Cir. 2001). That the Defendant sought his attorney's advice and instruction during certain portions of the

colloquy is not reason to disbelieve his sworn statements that he was voluntarily pleading guilty.

The Defendant argues that this was not the case because his entire plea was a sham predicated on bad advice from his counsel. He maintains that his counsel misled him into believing that "the only way he could win his case [] was to plead guilty to a conditional plea" and then take a direct appeal. (Mem. 5, ECF No. 218-1.) Additionally, he submits that it was misleading for counsel to claim that a jury[2] would not believe him over the testimony of FBI agents. In essence, the Defendant is saying that he could not have knowingly and voluntarily entered the plea agreement because he received ineffective assistance of counsel. He claims that, but for this bad advice and coercion, he would have proceeded to trial where he would have prevailed. Based on these allegations, the Defendant has stated grounds for relief that are sufficient to overcome the waiver in his plea agreement. Accordingly, the Court will consider the merits of his ineffective assistance of counsel claim.

"To make out a claim for ineffective assistance of counsel in the context of a guilty plea, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 716–17 (7th Cir. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985)); *see also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (confirming the appropriate inquiry for establishing prejudice when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea).

---

[2] The Defendant's Memorandum actually references the court rather than a jury, but a jury is the finder of fact during a jury trial, which includes making credibility determinations.

A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Here, the Court cannot find that counsel's performance fell below an objective standard of reasonableness.

Having been indicted on bank robbery charges, and having confessed to his involvement in the robbery, the Defendant was facing two choices. One option was for him to defend the charges at trial. Because the Court had already determined that his inculpatory statements were not obtained in violation of his constitutional rights and were therefore admissible against him, a trial would include testimony from the FBI agents about his confession. According to the Defendant, with respect to this option, his counsel told him that the jury would believe the FBI agents over the Defendant.

His second option was to avoid a trial by pleading guilty and, in turn, receiving some benefit at sentencing. He could then focus on an appeal to address the admissibility of the Defendant's confession. According to the Defendant, his counsel considered this a better option because he had a chance to overturn the Court's decision denying his motion to suppress the statements he made to the FBI agents.

Although the Defendant does not see it this way now, both options he was confronting would result in a finding that he was guilty of the charged bank robbery. The only difference was in the likely sentence that would be imposed before the Defendant could appeal the Court's decision on the motion to suppress. It is evident from his motions that the Defendant now

believes that the first option would have resulted in an acquittal. The Defendant's stated reason for believing this—and that his counsel's advice about his chances at trial was misleading—is that there was "no evidence" against him. (Mem. 7, ECF No. 218-1.) But, in making this proclamation, the Defendant ignores his confession and the statements the Government would have used against him at trial. He, again, ignores his statements to investigators when he compares his case to the outcome of Codefendant Travier's case, where a jury returned a not guilty verdict. The Defendant did not testify during Travier's trial, and the Government did not have the same inculpatory statements to use against Travier that it would have been able to use against the Defendant. Nothing about Travier's trial hints at the outcome for the Defendant's trial. Plus, Travier's trial was not conducted until after the Defendant pled guilty, so the outcome of Travier's trial was not known at the time the Defendant's counsel was advising him to plead guilty. Counsel did not perform below an objective standard of reasonableness when he presented a conditional plea and direct appeal as an option that presented a higher likelihood of success than a trial.

Additionally, the Defendant has not shown prejudice. There is no indication in the record that, at the time he made the decision to proceed with option two and plead guilty, the Defendant would have insisted on going to trial but for erroneous advice. He has pointed to nothing to suggest that going to trial, where testimony concerning his confession would be admitted, presented a chance of acquittal. "As a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea." *Lee*, 137 S. Ct. at 1966. "[D]efendants obviously weigh their prospects at trial in deciding whether to accept a plea," and "where a

defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Id.* (citation omitted).

In some cases, there may be factors other than "the likelihood of conviction after trial" that impact a defendant's decision whether to plead guilty. *Id.* For example, in *Lee*, counsel erroneously informed the defendant that he would not be deported if he entered a guilty plea. But in fact, the defendant's plea meant that he was subject to mandatory deportation. 137 S. Ct. at 1963. Upon learning that he would be deported, the defendant filed a motion to vacate his conviction and sentence on grounds that his counsel had provided constitutionally ineffective assistance. *Id.* The question before the Supreme Court was whether the defendant could show he was prejudiced by his counsel's erroneous advice. *Id.* at 1964.

The government argued that the defendant could not show prejudice because he "had no viable defense at trial, [so] he would almost certainly have lost and found himself still subject to deportation, with a lengthier prison sentence to boot." *Id.* at 1966. The defendant argued that "he never would have accepted a guilty plea had he known that he would be deported as a result." *Id.* Rather, "he would have gambled on trial, risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States." *Id*. Importantly, the defendant presented statements from his plea colloquy about immigration consequences that bore this out. *Id.* at 1963. In fact, the defendant provided "substantial and uncontroverted evidence" that "deportation was the determinative issue in . . . whether to accept the plea," and that he would not have pled guilty had he known that deportation was a consequence of such a plea. *Id.* at 1968. The Supreme Court decided that the defendant had "[i]n the unusual circumstances of [his] case . . . adequately demonstrated a reasonable probability that he would have rejected the

plea had he known that it would lead to mandatory deportation." *Id.* at 1967.

Here, the Defendant has not presented any evidence, "contemporaneous" to his plea, to substantiate his "*post hoc* assertions . . . about how he would have pleaded." *Id.* (warning that "[c]ourts should not upset a plea solely because of *post hoc* assertions"). Unlike in *Lee*, the Defendant has not pointed to any factor that he would have considered *more important* in his decisionmaking than his prospects at trial. In other words, he has not presented any basis to find that rejecting the conditional plea agreement would have been a rational decision. *Padilla v. Kentucky*, 559 U.S. 356 (2010) (stating that the defendant had to convince the court "that a decision to reject the plea bargain would have been rational"); *cf. Lee*, 137 S. Ct. at 1968–69 (concluding that rejecting the plea would not have been irrational, where to accept the plea would "*certainly* lead to deportation," but going to trial, despite exposure to more prison time, would only "*[a]lmost* certainly" lead to deportation). Here, the Defendant has not attempted a realistic assessment of "the respective consequences of a conviction after trial and by plea." *Id.* at 1966. To the contrary, he relies on an unrealistic and unsupportable analysis of his chances at trial.

The Defendant's trial prospects were not impacted by his counsel's advice. They were impacted by his own confession, which the Defendant had unsuccessfully attempted to suppress. The contemporaneous evidence is that the Defendant understood both of the options he faced after the Court denied his motion to suppress, and voluntarily entered a plea of guilty. He did not object to the Magistrate Judge's Findings and Recommendation, did not move to withdraw his plea, or deny his involvement in the bank robbery or question his decision to plead guilty at any time before or during the sentencing proceedings. His after-the-fact assertion that he would have

10

insisted on a trial is based on an event that occurred later (Travier's acquittal) and which is not, in any event, relevant to *his* case and the evidence that would have been presented at *his* trial. As stated above, the Defendant erroneously believes that because his Codefendant received a not guilty verdict after trial, that the Defendant likewise would have been acquitted, despite the glaring differences in the evidence the Government could present to a jury in the two cases.

It is telling that the Defendant has not indicated what his defense at trial could have been. Although he asserts that his counsel failed to investigate information that would prove his actual innocence, including interviewing Codefendant Travier, the argument is unsubstantiated and undeveloped. Additionally, the Defendant again fails to acknowledge that he confessed to his participation in the robbery. The Defendant has provided an affidavit, but does not indicate how any of the individuals he purportedly identified to his counsel (but does not identify in his affidavit) would have validated the claim of innocence he now makes. A § 2255 petitioner alleging ineffective assistance of counsel due to counsel's failure to investigate has the "burden of providing . . . a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quotation marks omitted); *United States ex rel. Simmons v. Grammley*, 915 F.2d 1128, 1133–34 (7th Cir. 1990) (dismissing cursory and speculative claim that counsel failed to investigate defenses). Additionally,

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill*, 474 U.S. at 59. Because the Defendant has not attempted to identify the evidence that an investigation would have produced, and thus how it might have impacted a trial, he cannot

sustain the claim that his counsel's ineffectiveness caused him to plead guilty.

"[S]trict adherence to the *Strickland* standard" is "essential" when reviewing claims about attorney error "at the plea bargaining stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011). "Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the Defendant] to renege on his representation under oath to the district court that there were no promises made to him to induce his guilty plea" and that he, in fact, committed the bank robbery for which he was charged. *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010); *see also United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). The Defendant's arguments, based on speculation and hindsight, do not entitle him to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation

marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here because no reasonable jurist could conclude that the Court's assessment of the Sixth Amendment claim regarding the negotiation of the plea agreement and the decision to plead guilty was debatable or wrong. The Court will not issue the Defendant a certificate of appealability.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion to Vacate [ECF No. 207], and supplemental Motion to Vacate [ECF No. 218], and DECLINES to issue a Certificate of Appealability. The Motion for Discovery Production of Audio and Video [ECF No. 219], Motion to Strike Plea Court Records [ECF No. 220], and Motion for Appointment of Counsel [ECF No. 221] are DENIED AS MOOT.

SO ORDERED on May 10, 2018.

                                        s/ Theresa L. Springmann
                                        CHIEF JUDGE THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT